**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICHMOND A. DELLASTATIOUS,
                    *Plaintiff-Appellant,*

and

FRANK ROMANO,
                                *Plaintiff,*

v.

DONALD F. WILLIAMS; RAY KELLY,
                    *Defendants-Appellees,*                    No. 00-1577

and

ADRIAN GLUCK; CRAIG NOVAK;
HOWARD KESSEL; SURROUNDVISION
ADVANCED IMAGING; LASERVISION
TECHNOLOGIES, INCORPORATED,
                                *Defendants.*

RICHMOND A. DELLASTATIOUS, FRANK
ROMANO,
                    *Plaintiffs-Appellees,*

v.

DONALD F. WILLIAMS; RAY KELLY,
                    *Defendants-Appellants,*

and                                No. 00-1595

ADRIAN GLUCK; CRAIG NOVAK;
HOWARD KESSEL; SURROUNDVISION
ADVANCED IMAGING; LASERVISION
TECHNOLOGIES, INCORPORATED,
                                *Defendants.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-98-1656-A)

Argued: December 6, 2000

Decided: February 22, 2001

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and
William L. GARWOOD, Senior Circuit Judge of the
United States Court of Appeals for the Fifth Circuit,
sitting by designation.

---

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Widener and Senior Judge Garwood joined.

---

**COUNSEL**

**ARGUED:** Michael Joseph, DYER, ELLIS & JOSEPH, P.C., Washington, D.C., for Appellant. Philip Richard Croessman, BASTIANELLI, BROWN & KELLEY, CHARTERED, Washington, D.C., for Appellees. **ON BRIEF:** Richard A. Kirby, DYER, ELLIS & JOSEPH, P.C., Washington, D.C.; David S. Bracken, COHEN, DUNN, CURCIO, KEATING & ROHRSTAFF, P.C., Alexandria, Virginia, for Appellant. Tina S. Tisinger, BASTIANELLI, BROWN & KELLEY, CHARTERED, Washington, D.C., for Appellees.

---

**OPINION**

WILKINSON, Chief Judge:

   Richmond Dellastatious brought this securities fraud action against Donald Williams and Raymond Kelly claiming that they were liable as "control persons" under the Securities Exchange Act of 1934 and

the Virginia Securities Act. *See* 15 U.S.C. § 78t(a); Va. Code § 13.1-522(C). The district court granted Williams and Kelly's motion for summary judgment, holding that they were not control persons and that they satisfied the statutes' good-faith defense. Because Williams and Kelly were corporate directors who acted in good faith reliance on a corporate decision-making process, we affirm the judgment of the district court.

## I.

LaserVision Technologies, Inc. developed a camera system that created souvenirs for fans at sporting events. In 1997, LaserVision formed SurroundVision Advanced Imaging, LLC, ("SAIL"), to finance the marketing of the technology. LaserVision was SAIL's corporate parent and a managing member of SAIL. Adrian Gluck, the president of LaserVision, served as CEO, president, and director of SAIL. Defendant Donald Williams, a director of LaserVision, served as a manager of SAIL. Defendant Raymond Kelly had no connection to SAIL except by virtue of his role as an outside director of LaserVision. Despite its connections to LaserVision, SAIL also had some of its own officers. For instance, Craig Novak served as SAIL's executive vice president and director, and Howard Kessel served as SAIL's chief financial officer.

In October 1997, Gluck invited plaintiff Richmond Dellastatious to become an equity investor in SAIL. In November 1997, SAIL sent Dellastatious offering documents regarding the sale of the SAIL securities ("November Offering Memorandum"). On December 3, 1997, Dellastatious invested $201,000 in SAIL. He subsequently purchased an additional $60,000 worth of SAIL's shares.

In reaching his decision to invest in SAIL, Dellastatious relied, at least in part, on the November Offering Memorandum. An earlier draft of this offering document had been prepared for SAIL by Gluck, Novak, Kessel, and Isaac Cohen, LaserVision's attorney. Sometime prior to November 1997, one of LaserVision's directors, Larry Berkowitz, reviewed and criticized the draft memorandum. Berkowitz had previously been a securities lawyer with the Securities and Exchange Commission. LaserVision's directors were informed that the problems with the memorandum were technical in nature and

would be corrected in accordance with Berkowitz's wishes. The memorandum was then revised effective November 12, 1997. This was the November Offering Memorandum that SAIL sent to Dellastatious. There is no evidence that, after this revision, Berkowitz had any further objections to the November Offering Memorandum.

Sometime near the beginning of December 1997, SAIL's offering memorandum was revised again. At the previous month's meeting, a committee had been formed to review SAIL's offering memorandum. Gluck, Berkowitz, and Williams were named to serve on the committee. According to the minutes from LaserVision's December meeting, the memorandum was revised so that SAIL could raise an additional $2 million in equity capital. The final revision to the offering memorandum was completed in March 1998. It was mailed to Dellastatious at this time. Shortly thereafter, however, SAIL ceased operations. Dellastatious' shares are now worthless.

On November 18, 1998, Dellastatious and Frank Romano, another SAIL shareholder, sued in federal district court. Named as defendants in the complaint were SAIL, three of SAIL's officers (Gluck, Novak, and Kessel), LaserVision, and two outside directors of LaserVision (Williams and Kelly). The gravamen of plaintiffs' complaint was that SAIL's November Offering Memorandum was misleading in several material respects. First, plaintiffs alleged that the memorandum misrepresented the closeness of the relationship between LaserVision and SAIL. Plaintiffs argued that SAIL was essentially a shell corporation run by LaserVision and LaserVision's directors. Plaintiffs also alleged that the November Offering Memorandum grossly overstated SAIL's projected revenues and misrepresented the nature of SAIL's assets. Finally, plaintiffs alleged that Williams and Kelly, although perhaps not directly responsible for the securities fraud, were liable as "control persons" under Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), and the Virginia Securities Act, Va. Code § 13.1-522(C).

On October 15, 1999, the district court granted Williams and Kelly's motion for summary judgment. The court assumed that plaintiffs could prove that one of the other defendants was primarily liable for securities fraud violations. However, the court determined that neither Williams nor Kelly were control persons of any liable party.

The court also held that Williams and Kelly lacked the requisite culpability for control person liability. Williams and Kelly subsequently moved for sanctions and attorneys' fees against plaintiffs and their counsel. The district court denied this motion.

In October 1999, Dellastatious and Romano settled their claims against the three SAIL officers, Novak, Gluck, and Kessel. On April 13, 2000, the court ordered that judgment against SAIL and LaserVision be entered in favor of Dellastatious. The court awarded Dellastatious $285,801.97 for his claims under § 13.1-522 of the Virginia Code and $156,694.70 for his common law fraud claim. In addition, the court granted judgment against Romano in favor of SAIL and LaserVision.

Dellastatious now appeals the district court's holding that Williams and Kelly were not liable as control persons under either the state or federal securities laws. Williams and Kelly cross-appeal the district court's denial of their motion for sanctions.

## II.

## A.

Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provides for derivative liability of persons who "control" those who are primarily liable under the Exchange Act.[1] However, control persons may escape liability by proving that they acted in good faith with regard to the securities violation. *See* 15 U.S.C. § 78t(a). To determine whether the good-faith affirmative defense has been satisfied under section 20(a), defendants must show that they did

---

[1]Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

not act recklessly. Negligence on the part of defendants is insufficient to establish liability. *See Carpenter v. Harris, Upham & Co.*, 594 F.2d 388, 394 (4th Cir. 1979). "[O]ur task is to examine what the defendants could have done under the circumstances to prevent the violation, and then ask whether the defendants — aware that they could take such measures — decided not to. This is just to say that we are to determine whether there is a genuine issue of fact regarding the defendants' recklessness." *Donohoe v. Consolidated Operating & Prod. Corp.*, 30 F.3d 907, 912 (7th Cir. 1994); *see also G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 (5th Cir. 1981) (to qualify for the good-faith defense, controlling persons must establish that they did not act recklessly).

The Virginia Securities Act, Va. Code § 13.1-522(C), also establishes a defense for control persons. The statute allows control persons to avoid liability if they can prove that they "did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist." Va. Code § 13.1-522(C).[2] Dellastatious argues that the Virginia good-faith defense is stricter than its federal counterpart because it requires defendants to prove that they were not negligent, as opposed to not reckless. For purposes of this appeal we will assume that defendants must show that they acted reasonably in order to satisfy Virginia's good-faith defense.

B.

Dellastatious contends that Williams and Kelly are liable as control persons under both federal and Virginia law for the fraud committed by SAIL. *See* 15 U.S.C. § 78t(a); Va. Code § 13.1-522(C). We shall

---

[2]The Virginia Securities Act, Va. Code § 13.1-522(C), provides in part:

> Every person who directly or indirectly controls a person liable under . . . this section, including every partner, officer, or director of such a person, . . . shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

assume, without deciding, that Williams and Kelly were control persons under both the federal and state laws. *See* 15 U.S.C. § 78t(a) (extending liability to "[e]very person who, directly or indirectly, controls" one liable for securities violations); Va. Code § 13.1-522(C) (extending liability to "[e]very person who directly or indirectly controls" one liable for securities violations, "including every partner, officer, or director of such a person").

Dellastatious argues that, at the very least, there is a genuine issue of fact regarding whether Williams and Kelly acted in good faith. We disagree. Williams and Kelly have carried their burden of proving that they acted reasonably. As a result, they are entitled to the good-faith affirmative defense under both federal law and Virginia's allegedly more-exacting standard.

A defendant can satisfy the good-faith defense by demonstrating that he used reasonable care to prevent the securities violation. *See Donohoe*, 30 F.3d at 912 (interpreting 15 U.S.C. § 78t(a)); *see also* Va. Code § 13.1-522(C). One way to determine whether Williams and Kelly acted with "reasonable care" pursuant to Va. Code § 13.1-522(C), is to consider whether they complied with the duties established for directors under state law.[3] Virginia Code § 13.1-690 establishes "the standard by which to evaluate a director's discharge of duties in Virginia." *Willard v. Moneta Bldg. Supply, Inc.*, 515 S.E.2d 277, 284 (Va. 1999).[4] If a director acts in accordance with that stan-

---

[3]While Dellastatious brought several different claims against Williams and Kelly in their different capacities, all of Dellastatious' claims revolve around Williams and Kelly's roles as directors of LaserVision. The key to Dellastatious' theory is that SAIL is a shell corporation and that LaserVision and its officers are the bad actors. As a result, we assess the reasonableness of Williams and Kelly's conduct with an eye toward the duties owed by corporate directors.

[4]Section 13.1-690 states, in relevant part:

A. A director shall discharge his duties as a director, . . . in accordance with his good faith business judgment of the best interests of the corporation.

B. Unless he has knowledge or information concerning the matter in question that makes reliance unwarranted, a director is

dard, Va. Code § 13.1-690(C) provides a "safe harbor" that shields a director from liability "for any action taken as a director, or any failure to take any action." Va. Code § 13.1-690(C); *see also Willard*, 515 S.E.2d at 284 (discussing § 13.1-690(C)'s safe harbor provision); *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1183 (4th Cir. 1995) (same). Although the few cases interpreting section 13.1-690 have concerned protections afforded directors under the business judgment rule, the statutory text is in no way limited to that. In light of 13.1-690(C)'s expansive safe harbor provision, it seems unlikely that section 13.1-522(C) would hold directors to a higher standard of care than that set forth under section 13.1-690.

Pursuant to section 13.1-690(B), as long as directors have no knowledge that makes reliance unwarranted, they may rely on financial statements prepared by corporate officers, legal counsel, or public accountants. *See Willard*, 515 S.E.2d at 285. In cases such as this, where shareholders allege that directors have insufficiently supervised the corporation's affairs, directors can avoid liability by showing that they attempted in good faith to ensure that an adequate corporate information-gathering and reporting system was in place. In *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 969-70 (Del. Ch. 1996), the leading case in this area, the Delaware Court of Chancery

---

entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by:

1. One or more officers or employees of the corporation whom the director believes, in good faith, to be reliable and competent in the matters presented;

2. Legal counsel, public accountants, or other persons as to matters the director believes, in good faith, are within the person's professional or expert competence; or

3. A committee of the board of directors of which he is not a member if the director believes, in good faith, that the committee merits confidence.

C. A director is not liable for any action taken as a director, or any failure to take any action, if he performed the duties of his office in compliance with this section.

held that directors are not liable under a failure to monitor theory where they did not know of the specific bad acts within the corporation and they made a good faith attempt to assure that a reasonable decision-making process existed. As *Caremark* indicates, mishaps within a corporation do not alone entitle a plaintiff to bring suit against directors in their personal capacities. Chancellor Allen pointedly described claims for failure to adequately monitor corporate activities as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Id.* at 967. His statement reflects the reality that service as director of a corporation should not be a journey through liability land mines.

Here, Williams and Kelly complied with Virginia's standards for directorial duties, and they likewise acted with reasonable care under § 13.1-522(C). Williams and Kelly were outside directors who served on LaserVision's board because they had invested $2.2 million in LaserVision. They were not experts on the LaserVision technology and they had no role in SAIL's plan to market the technology. It was reasonable for Williams and Kelly to delegate the creation and review of SAIL's offering documents to SAIL's officers, Gluck, Novak, and Kessel, and their attorney, Isaac Cohen. Gluck, SAIL's CEO and president, was a professional engineer who understood the LaserVision technology that SAIL would be marketing. Gluck was also a successful entrepreneur who was experienced in raising capital for companies. Novak, SAIL's executive vice president, had a masters degree in finance and previously had been a Managing Director at Merrill Lynch. Kessel, SAIL's chief financial officer, was a certified public accountant who earlier had worked at a major accounting firm. Cohen was an attorney experienced in drafting offering documents. The offering documents then were also reviewed by Larry Berkowitz, who previously had worked as an attorney for the Securities and Exchange Commission.

Furthermore, the evidence shows that SAIL's system for drafting and reviewing offering documents functioned properly. In October 1997, after Cohen had drafted the original offering documents, Berkowitz reviewed them. When Berkowitz expressed concern regarding the documents, this fact was communicated to LaserVision's board. The board was informed that the problems were technical in nature and would be corrected. As far as Williams or Kelly knew, the offer-

ing documents were redrafted to accommodate Berkowitz's concerns. After the offering memorandum was revised, Williams stated that he was unaware of any further complaints from Berkowitz. The very fact, however, that Berkowitz's concerns were presented to the board suggests that a effective policy was in place and the reviewers were scrutinizing what the drafters wrote.

Dellastatious can hardly suggest that Williams or Kelly should not have relied on SAIL's officers and legal counsel, all of whom by virtue of their position or expertise were more intimately involved with the production of the offering documents. Nevertheless, in an effort to defeat summary judgment Dellastatious points to (1) Kelly's practice of occasionally not reading the materials that LaserVision sent to him; (2) Williams and Kelly's knowledge that Berkowitz voiced concerns about the original draft of the offering memorandum; (3) Kelly's general statement that he thought Gluck's projections were "pretty grandiose at times"; and (4) the fact that Williams was a member of the committee charged with revising the November Offering Memorandum.

However, none of these facts suggest that Williams and Kelly acted unreasonably. The first three facts are subsumed by the presence of SAIL's system for identifying and correcting any errors in the offering documents. Williams and Kelly were neither negligent nor reckless in relying on those methods and on the experience of the other directors. *See* Va. Code § 13.1-690(B). The fact that Williams served on a revision committee also fails to raise a jury question regarding his good faith. The minutes from LaserVision's December meeting state that the offering memorandum was revised so that SAIL could raise an additional $2 million in equity capital. Williams saw the offering documents for the first time near the beginning of December, and SAIL sent Dellastatious the final version when it was completed in March, 1998.

Williams and Kelly have presented sufficient evidence to show they acted in good faith and diligently carried out their duties. At most, the evidence reveals that Williams and Kelly had only a tangential relationship to SAIL and its efforts to raise capital. There is no evidence that Williams and Kelly were aware of any irregularities in the materials that were sent to Dellastatious. They were never charged

with drafting or revising any of the documents before SAIL submitted them to Dellastatious in November. Nor did they ever meet or communicate with Dellastatious. Furthermore, none of the money that Dellastatious invested in SAIL was dispersed to Williams or Kelly. The district court aptly described their relationship with SAIL's efforts to raise capital as "on the far periphery."

A jury could not infer from their positions as outside directors of LaserVision and SAIL that Williams and Kelly acted in bad faith. Because Williams and Kelly have satisfied the standard of Virginia's good-faith defense, *see* Va. Code § 13.1-522(C), they also qualify for the defense under section 20(a) of the Exchange Act. *See* 15 U.S.C. § 78t(a). We therefore affirm the district court's grant of summary judgment in Williams and Kelly's favor.[5]

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[5]Williams and Kelly cross-appeal the district court's denial of their motion for sanctions under Fed. R. Civ. P. 11 and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(c) ("PSLRA"). The district court denied defendants' motion for sanctions but failed to make the specific factual findings required under the PSLRA. *See* 15 U.S.C. § 78u-4(c)(1); *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166-67 (2d Cir. 1999). Because the PSLRA "does not in any way purport to alter the substantive standards for finding a violation of Rule 11," *Simon DeBartolo*, 186 F.3d at 167, and because our own review of the record provides no basis for awarding sanctions in this instance, a remand here would be unnecessary.