**Konrad Eric POTH, et al., Plaintiffs,**

v.

**Craig A. RUSSEY, et al., Defendants.**

**No. CIV.A.02–770–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Sept. 5, 2003.

John Martin Wood, Esquire, Reed Smith, Falls Church, VA, for Plaintiffs.

Michael Robert Goodstein, Esqiure, Arter & Hadden, Washington, DC, Kenneth Edward Labowiz, Esquire, Dingman Labowitz, Alexandria, VA, for Defendants.

## *AMENDED MEMORANDUM OPINION*

LEE, District Judge.

THIS MATTER is before the Court on Defendants', Craig A. Russey, et al., motion for summary judgment on all of Plaintiffs', Konrad Eric Poth, et al., claims. This case concerns a merger agreement entered into by the parties whereby Defendants acquired 100 percent of Plaintiffs' company and Plaintiffs' post-merger expectations. The issue before the Court is whether there is a genuine issue of material fact in dispute concerning the circumstances surrounding the merger agreement between Excalibur Cable Communications, Ltd., and Viasource Communications, Inc., (the "Merger Agreement") which precludes the granting of summary judgment in favor of Defendants Craig A. Russey, et al., on Plaintiffs Konrad Eric Poth, et al.'s, claims of federal and state securities fraud, common law

fraud (actual and constructive), and breach of fiduciary duty. For the reasons set forth below, the Court grants summary judgment in favor of Defendants as to all counts. The Defendants are entitled to summary judgment as to the federal and state securities claims as a matter of law because Plaintiffs are unable to raise an issue of material fact regarding their unreasonable reliance on unsubstantiated oral statements that were in contradiction to the terms of the Merger Agreement that Plaintiffs signed. The Defendants are entitled to summary judgment as to the common law fraud claim for the same reason. Furthermore, the Defendants are entitled to summary judgment on the breach of fiduciary duty claim because the Defendants did not owe Plaintiffs a fiduciary duty before the Merger Agreement was signed, and any fiduciary duty that existed before Viasource filed for bankruptcy falls within the jurisdiction of the bankruptcy court and is asserted by the trustee for the benefit of all the Viasource creditors.

## I. BACKGROUND

This action arises out of (1) the Merger Agreement entered into by Excalibur Cable Communications, Ltd., ("Excalibur") and Viasource Communications, Inc., ("Viasource") whereby Viasource acquired 100% of Excalibur's voting stock; (2) an initial public offering for Viasource common stock which commenced on August 18, 2000 (the "IPO"); and (3) Viasource's bankruptcy filed on November 15, 2001, in the United States Bankruptcy Court for the Southern District of Florida. Plaintiff Konrad E. Poth is the founder and former Chief Executive Officer and President of Excalibur. He is an accredited investor within the meaning of Regulation D promulgated under the Securities Act of 1933. (Poth Tr. at 16:9–12, 41:10–42:4, Merger Agreement ¶ 5.23.) The other plaintiff is a Trust established by Mr. and Mrs. Poth for the benefit of Mrs. Poth's son. Defendants Craig A. Russey, Roy D. Tartaglia, Bruce A. Nassau, and Randall R. Lunn are former officers and directors of Viasource. William W. Sprague and V. Michael Fitzgerald are former directors of Viasource. Douglas J. Betlach is a former officer of Viasource. Crest Communications Holdings, LLC, and Crest Communications Partners LP were shareholders of Viasource.

In the fall of 1999, Russey, then President of Viasource, approached Poth, then President of Excalibur, to discuss the possible merger of Excalibur with Viasource. After extensive negotiations and several drafts of both a letter of understanding and the Merger Agreement, the parties signed the Merger Agreement on June 1, 2000. Each party had the opportunity to conduct due diligence of the other. (Letter from J. Holman, Esq. to B. Houser, Esq. of April 4, 2000.) Pursuant to the Merger Agreement, Viasource purchased 100 percent of the Excalibur voting stock for consideration of (1) $4 million in cash, (2) $4 million in subordinated promissory notes (the "Notes"), expressly subordinated to Viasource Senior Indebtedness owed to General Electric Capital Corporation ("GECC"), and (3) 3,200,000 shares of Viasource common stock valued at $2.50 per share for the purposes of the transaction, for a total consideration of $16 million. The Merger Agreement contained an integration provision and an "arm's length negotiations" provision, which stated that each party had "fully informed itself of the terms, contents, conditions and effects of this Merger Agreement." (Merger Agreement ¶ 14.10.) This provision further stated that "this Agreement is the result of arm's length negotiations conducted by and among the parties and their respective counsel." (Id.)

With reference to the specific claims at issue, the Merger Agreement provided

that the Notes were subject to mandatory prepayment if Viasource made an IPO for cash proceeds of at least $50,000,000. In the absence of prepayment, the Notes were to mature 18 months after closing of the merger, or December 1, 2001. The Merger Agreement also provided for a one-year holdback of ten percent of the purchase price to fund potentially indemnifiable claims that Viasource might become aware of after the Merger Agreement closing. (Merger Agreement ¶ 8.3.) Defendants contend that Viasource became aware of sexual harassment and discrimination claims filed by former Excalibur employees, and that Viasource entered into discussions with Poth about resolving these claims. The Merger Agreement also provided for potential post-closing adjustments to the purchase price. (Merger Agreement ¶ 7.12.) The parties disagreed on the appropriate amount of money that constituted the post-closing adjustment, and Poth invoked the dispute settlement procedure provided in the Merger Agreement.

In addition, paragraph 11.7 of the Merger Agreement provided that Viasource would indemnify Poth for those personal guarantees not removed prior to closing the sale of Excalibur. Paragraph 7.14 stated that "[f]ollowing the Closing, the ViaSource Companies, [Excalibur] and the Shareholders ... shall ... use their best efforts to cause Eric Poth to be released from all personal guarantees of the obligations identified on Schedule 7.14." The Merger Agreement also provided for Poth's employment within Viasource after the merger. (Merger Agreement ¶ 10.6.) Poth was employed with Viasource from June 2000 to April 2001, when Viasource terminated the employment without cause because Viasource began experiencing financial difficulties. Poth was given a one-year separation agreement and was paid pursuant to the terms in that agreement until Viasource filed for bankruptcy.

While Viasource was negotiating the purchase of Excalibur with Poth, it was also taking steps towards making an IPO. The timing of the IPO was influenced by the fact that Viasource was discussing the acquisition of Excalibur and several other companies during the first half of 2000. In January 2000, Viasource retained the investment banking firm of Donaldson, Lufkin & Jenrette ("DLJ"). DLJ advised Viasource that an IPO in the $100 to $150 million range "[would] attract significant interest from investors." (DLJ Presentation to Viasource of January 25, 2000.) On June 2, 2000, Viasource filed with the Securities and Exchange Commission ("SEC") the first of a series of formal draft Form S–1 Registration Statements; this first registration statement stated that Viasource would issue $200 million worth of public securities. (Form S–1 Registration Statement for Viasource of June 2, 2000.) Viasource subsequently filed six amendments to this initial Form S–1. Viasource continued to adjust the offering price from a high of $15 per share to a final $8 per share. The expected gross proceeds varied from a high of $189,750,000 to the final expected gross proceeds of $46,000,000. On August 16, 2000, DLJ advised Viasource that market conditions and market perception of companies comparable to Viasource were such that the best IPO offering price available was $8 per share for 5,750,000 shares. (Carr Decl. ¶¶ 11, 13.) On August 18, 2000, Viasource launched its IPO at an initial offering price of $8 per share, for 5,750,000 shares of common stock, and raised net proceeds of $42 million.

After the IPO, Viasource did not fulfill some of its obligations under the Merger Agreement, and Poth sued Viasource for breach of contract in June 2001. On November 15, 2001, Viasource filed for bankruptcy. Poth's breach of contract action was stayed due to the bankruptcy filing. This action followed in May 2002.

## II. DISCUSSION

The Defendants are entitled to summary judgment as to the federal and state securities claims as a matter of law because Plaintiffs are unable to raise an issue of material fact regarding their unreasonable reliance on unsubstantiated oral statements that were in contradiction to the terms of the Merger Agreement that Plaintiffs signed. The Defendants are entitled to summary judgment as to the common law fraud claim for the same reason. Furthermore, the Defendants are entitled to summary judgment on the breach of fiduciary duty claim because the Defendants did not owe Plaintiffs a fiduciary duty before the Merger Agreement was signed, and any fiduciary duty that existed before Viasource filed for bankruptcy falls within the jurisdiction of the bankruptcy court and must be asserted by the trustee for the benefit of all the Viasource creditors.

### A. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56(e) requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To establish liability under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and under Rule 10b–5, a plaintiff must allege that "(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiable relied (4) that proximately caused the plaintiff damages." *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1027 (4th Cir.1997). *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Such claims generally involve allegations of fraud, and a plaintiff must also meet the requirements of Rule 9(b) of the Federal Rules of Civil Procedure that "the circumstances constituting fraud ... be stated with particularity" in the complaint. Fed.R.Civ.P. 9(b). Section 10(b) provides the elements that the plaintiff will have to prove in order to succeed on his claim. Rule 9(b) provides the standard for pleading a fraud case; however, Congress has codified the pleading standard that a plaintiff must meet in a securities fraud action in order to survive a 12(b)(6) motion to dismiss—the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4, *et seq.*

### B. Analysis

1. *The Federal and Virginia Securities Fraud Claims—Counts I, II, IV, and V*

Counts I and II of the Complaint allege violations of the federal securities laws

arising out of the alleged misrepresentations by Defendants Russey and Fitzgerald that induced Plaintiffs into the Merger Agreement to acquire Viasource securities. Counts IV and V allege similar claims under the Virginia Securities Act, Va.Code Ann. § 13.1–502(2). Plaintiffs' claim is based on alleged pre-merger discussions between Russey and Fitzgerald and Poth.

Plaintiffs contend that Russey and Fitzgerald promised Poth that Viasource would fulfill the various obligations contained in the Merger Agreement. Plaintiffs claim that Russey and Fitzgerald misrepresented that: (1) the ten percent holdback of the purchase price would be paid on or before June 1, 2001 (Compl.¶¶ 62(a), 67(a)); (2) the post-closing adjustment would be timely calculated and promptly paid (*id.* ¶¶ 62(c), 67(c)); (3) Poth would be released *from all* of his personal guarantees (*id.* ¶¶ 62(d), 67(d)); and (4) Poth would be employed pursuant to an employment contract for three years and, if terminated, would be paid one year's compensation (*id.* ¶ 62(f)). Plaintiffs also claim that they relied on fraudulent promises by Russey and Fitzgerald that: (1) the Note would be paid upon the occurrence of the Viasource IPO (Compl.¶¶ 27, 31, 35, 62(b), 67(b)); (2) the Note would be paid promptly (*id.* ¶¶ 28, 31); (3) the threshold of IPO proceeds necessary to trigger the prepayment obligation would be easily met (*id.* ¶¶ 29, 31); (4) the IPO share price would be $14 to $16 per share (*id.* ¶¶ 30, 31); and (5) the only Viasource debt that was senior to the Note was the existing GECC Senior Indebtedness (*id.* ¶ 78).

Defendants contend that Plaintiffs' allegations are not actionable because the alleged misrepresentations by Russey and Fitzgerald were not material statements of present fact: they were opinions and projections about future events. Defendants also contend that Plaintiffs were not justi-

fied in relying on Russey's and Fitzgerald's misstatements because Poth is a sophisticated investor with no long-standing or personal or fiduciary relationship to the Defendants. Defendants assert that Poth and his attorney for the transaction had access to all of the promissory notes and materials from other acquisitions evidencing Viasource's debt. Defendants contend that the alleged misrepresentations were made openly and not concealed. Defendants assert that Plaintiffs offer no specifics concerning the time, place, or wording of the alleged misrepresentations. Defendants contend that "[c]ircumstantial evidence that alleged promises of future events did not occur falls far short of satisfying plaintiffs' burden to prove that Russey and Fitzgerald knew that such future events would not occur at the time the alleged statements were made." (Defts.' Mem. Reply Mot. Summ. J. at 13.)

a. *Alleged Misrepresentations Contradicted by Provisions in the Merger Agreement*

■ Plaintiffs' alleged misrepresentations regarding the 10 percent holdback, Poth's employment agreement, the personal guarantees, and the post-closing adjustment are not actionable because Plaintiffs unreasonably relied on any misrepresentations by Russey and Fitzgerald when they had conflicting statements in the Merger Agreement. Actually, the Merger Agreement incorporated all of these provisions: paragraph 8.3 (addressing the 10 percent holdback), paragraph 10.6 (addressing Poth's employment agreement), paragraphs 7.14 and 11.7 (addressing the release of Poth's personal guarantees), paragraph 7.12 (addressing the post-closing adjustments to the purchase price). (Defts.' Mem. Supp. Summ. J. at 7–9). And, it is undisputed that Viasource performed certain obli-

gations under the Merger Agreement. (*Id.*)

The Fourth Circuit has provided an eight factor test to determine whether a party is justified in relying on the misrepresentations when he has contrary written statements in his possession. *See Foremost Guaranty Corp. v. Meritor Savings Bank,* 910 F.2d 118 (4th Cir.1990). The eight factors are

> (1) the sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Id.* at 123–24.

First, Poth is an accredited investor under SEC Regulations (Merger Agreement ¶ 5.23); he also has a business degree (Poth Tr. at 16:9–12, 45:17–46:22) and created and operated, for twenty years, a $60 million cable installation company (Compl.¶¶ 18–19). Poth also hired an attorney that assisted him in the transaction; he was not a novice to the business world. Second, Plaintiffs do not assert that Poth possessed a long-standing or close relationship with either Russey or Fitzgerald. They allege that Poth knew Defendant Bruce Nassau well because they were in the same business and that Nassau's company had been acquired by Viasource. (Plts.' Mem. Opp'n. Summ. J. at 32.) They also allege that Nassau arranged for the negotiations between Poth and Russey and Fitzgerald. (*Id.*) However, there is no evidence (outside of Poth's self-serving affidavit) that Poth had a close relationship with Russey or Fitzgerald or that he had any previous contact with Via-

source. Third, Poth and his attorney were granted unfettered access to perform due diligence on Viasource prior to the merger. (Holman Tr. at 42:1–3.) There is no evidence that Viasource prevented, in any way, the Plaintiffs from conducting due diligence. Also, Plaintiffs signed the Merger Agreement which allegedly contradicted Russey's and Fitzgerald's representations; the Merger Agreement, signed by Poth, expressly warranted that the Merger Agreement was "the result of arm's-length negotiations conducted by and among the parties and their respective counsel." (Merger Agreement ¶ 14.10.) Fourth, Viasource did not owe Poth any fiduciary duty prior to the merger because Plaintiffs were not shareholders of Viasource. *See, e.g., Simons v. Cogan,* 549 A.2d 300, 304 (Del.1988).

Fifth and sixth, as mentioned under the third factor analysis, Poth and his attorney had ample access to Viasource's financials. Poth's attorney sent Viasource a list of documents they sought in connection with their due diligence, including "note purchase agreements [and] notes" and "[a]ny agreements, in principle or otherwise, with respect to mergers, acquisitions . . . or acquisition of the shares or assets of any other business by [Viasource] . . . as to which Viasource may have a continuing liability." (Letter from J. Holman, Esq. to B. Houser, Esq. of April 4, 2000.) Plaintiffs contend that due diligence, in this case, was rendered ineffective because there was no way for Poth to investigate the truthfulness of the statements: the statements were made by insiders who knew of Viasource's growth plans. This contention conversely shows that Russey and Fitzgerald possessed a basis for the representations they made to Poth—this argument is inapposite because it does not raise an issue as to whether Plaintiffs were granted access to the relevant information. There is also no allegation that the Defen-

dants sought to conceal the fraud; furthermore, Poth's attorney cautioned him that a Viasource IPO might not raise $50 million "regardless of what these guys are telling you." (Poth Tr. at 159:20–160:3.)

Seventh, both parties had an interest in expediting the merger. Plaintiffs sought to expedite the transaction so that Poth could "cut back on his extensive duties with [Excalibur]." (Plts.' Mem. Opp'n Summ. J. at 2.) Defendants sought to acquire telecommunication companies in order to make Viasource a more attractive purchase for its upcoming IPO. This factor does not weigh in either party's favor. Eighth, Plaintiffs offer no specifics concerning the who, what, when, or how of the alleged misrepresentations. The allegations are not specific as to speaker, time, place, or wording.

Considering all the factors, the Court finds that all factors, except the seventh, weigh in favor of the Defendants. Plaintiffs cannot demonstrate justifiable reliance under seven of the eight factors; thus, they cannot claim reasonable reliance on any of the oral representations that are contradicted by the Merger Agreement which Plaintiffs received, reviewed, consulted with their lawyer, and acknowledged with their own signatures. Plaintiffs fail to raise a genuine issue of material fact on this point.

### b. *Alleged Misrepresentations Concerning Future Events*

One of the elements in a securities fraud claim, either federal or state, is that the alleged misrepresentations were material statements of fact that were false when made. *Kas v. First Union Corp.*, 857 F.Supp. 481, 488 (E.D.Va.1994). Materiality is an objective and fact-specific determination that "involves the significance of an omitted or misrepresented fact to a reasonable investor." *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 356 (4th Cir.

1996). The Fourth Circuit has defined a fact as material "if there is a substantial likelihood that a reasonable [investor] (1) would consider the fact important in deciding whether to buy or sell the security or (2) would have viewed the total mix of information made available to be significantly altered by disclosure of the fact." *Longman v. Food Lion, Inc.*, 197 F.3d 675, 682–83 (4th Cir.1999). Plaintiffs must demonstrate that Defendants intended, at the time of the alleged promises, not to honor their promises. *Petra Int'l Banking Corp. v. First Am. Bank of Va.*, 758 F.Supp. 1120, 1139 (E.D.Va.1991). The falsity of the statements when made "must be supported by objective evidence." *Connelly v. Gen. Med. Corp.*, 880 F.Supp. 1100, 1118 (E.D.Va.1995).

The statements falling under this category are not material because the totality of the circumstances describes an overall scheme portraying the future of Viasource, and a reasonable investor would not consider the alleged statements as actually significant in a deliberation to invest in Viasource. The Fourth Circuit has explained that "soft, puffing statements generally lack materiality because the market price of a share is not inflated by vague statements predicting growth." *Hillson Partners LP v. Adage, Inc.*, 42 F.3d 204, 211 (4th Cir.1994). The Court added that "[n]o reasonable investor would rely on these statements, [because] they are certainly not specific enough to perpetrate a fraud on the market[:]" predictions of future growth "not worded as guarantees are generally not actionable under the federal securities laws." *Id.* The Court distinguished statements of belief or opinion concerning current or past facts that may be material from opinions on future events which are generally not material. *Id.* Statements of future performance are actionable under Section 10(b) and Rule 10b–

"only if they are supported by specific statements of fact or are worded as guarantees." *Id.* at 212.

Plaintiffs adduce that Russey and Fitzgerald misrepresented the amount of revenue that the IPO was going to generate because (1) the IPO generated only $46 million in gross and (2) Russey and Fitzgerald did not have a basis for making the pre-merger prediction that the IPO would generate $150–160 million. Russey's and Fitzgerald's predictions as to how much money the IPO would generate, however, were based on DLJ's estimate that a post-merger Viasource would attract between $150–160 million from investors. Furthermore, the record supports Russey's and Fitzgerald's belief that the IPO would generate about $150 million: DLJ advised Viasource of this amount and Viasource's initial Form S–1 and the subsequent amendments, adjusting the amount from a high of $189 million to a final $46 million. Russey and Fitzgerald were not guarantors of future performance. Plaintiffs maintain that the legal opinion, produced nine months *post-merger*, stating that Poth's notes could not be paid within eighteen months of the merger, is evidence that Defendants knew, *pre-merger*, that they could not pay Plaintiffs' Note when it came due. However, this argument is meritless, and Plaintiffs fail to present any evidence that Russey or Fitzgerald knew, prior to the closing of the Merger Agreement, that Viasource would be unable to pay on the Note because it would be in bankruptcy eighteen months later.

The statements regarding the "guarantee" by Russey and/or Fitzgerald that the $50 million threshold for the IPO would be met and that the Note would be paid off at the time of the IPO were statements of belief and opinion supported by objective evidence. As discussed above, Russey and Fitzgerald had a reasonable basis to state that the $50 million threshold for the IPO

would be met because they were relying on DLJ's estimate of the IPO. Furthermore, Plaintiffs fail to raise any genuine issue of material fact that Russey and Fitzgerald lacked a good faith basis when they made such a statement. Plaintiffs argue that the statement was a lie simply because it did not come about; however, this is fraud by hindsight and is not actionable under the securities laws. *See Hillson*, 42 F.3d at 209.

The Court notes, at this time, that Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment is largely based on the allegations in the Complaint and a 48–paragraph affidavit by Poth. In his affidavit, Poth makes numerous conclusory statements as to the legal effect of Russey's and Fitzgerald's statements; however, "[m]ere speculation by the non-moving party cannot create a genuine issue of material fact." *Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir.2001). Poth also makes statements contradicting his earlier sworn deposition testimony; the Court rejects Plaintiffs' attempt to create issues of credibility to defeat summary judgment by contradicting Poth's own earlier sworn testimony. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir.1983); *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). For foregoing reasons, the Court grants summary judgment in favor of Defendants on the federal securities claims, Counts I and II.

### c. The Virginia Securities Act Claims

Under the Virginia Securities Act, "[i]t shall be unlawful for any person in the offer or sale of any securities, directly or indirectly, ... (2)[t]o obtain money or property by means of any untrue statement of a *material* fact or any omission to state a material fact necessary in order to

make the statements made, in the light of the circumstances under which they were made, not misleading . . . ." Va.Code Ann. § 13.1–502 (West 2002) (emphasis added). The Virginia Securities Act provisions are similar to those of Section 10(b) of the Exchange Act. Both statutes require the essential elements of a claim for common law fraud: (1) that defendants made a statement or omission (2) of material fact (3) intentionally and knowingly, (4) with an intent to mislead, (5) plaintiffs justifiably relied upon such false statement, and (6) the statements proximately caused plaintiff's damages. *See Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1027 (4th Cir.1997); *Richmond Met. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 507 S.E.2d 344, 346 (1998). As discussed in the previous two sections, Plaintiffs' assertions regarding the pre-merger misrepresentations alleged in Plaintiffs' securities fraud claims are not actionable because Plaintiffs unreasonably relied on any misrepresentations by Russey and Fitzgerald when they had conflicting statements in the Merger Agreement. Also, the alleged pre-merger statements are not actionable because they are not material or were not false when made. For the reasons set forth in the previous two sections, the Court grants summary judgment in favor of Defendants on the Virginia Securities Claims, Counts IV and V.

### 2. *The Pre–Merger Fraud Claims— Counts VI and VII*

■ Under Virginia law, in order to prevail on a claim of fraud, the plaintiff must prove by clear and convincing evidence "(1) a false representation (2) of a material fact (3) made intentionally and knowingly (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Richmond Met. Auth.*, 507 S.E.2d at 346. Constructive fraud requires that "a false representation of a material fact was made

innocently or negligently, and the injured party was damaged as a result of reliance upon the misrepresentation." *Id.* at 347. In order to maintain both a breach of contract and a tortious breach of duty, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.* In this case, Plaintiffs' allegations relate to the negligent performance of contractual duties and are not actionable in tort; thus Plaintiffs' claim for constructive fraud fails as a matter of law.

■ Furthermore, each particular misrepresentation by the Plaintiffs relates to a duty or an obligation specifically required under the Merger Agreement. The Merger Agreement contained provisions relating specifically to the alleged misrepresentations: (1) that the holdback of 10 percent of cash, notes, and stock would be paid on or before June 1, 2001, and would be reduced only for certain indemnification claims that were specifically itemized (*see* Merger Agreement ¶ 8.3); (2) that the Notes would be paid from the proceeds of Viasource's IPO or no later than 18 months from closing (*see id.* Tabs 6 and 7); (3) that the Defendants would timely calculate the amount of any post-closing adjustment of Excalibur's value, and promptly pay any positive amount to the Plaintiffs (*see id.* ¶ 7.12); (4) that the Defendants would have Poth released from any personal guarantees on leases for vehicles and equipment acquired by Viasource from Excalibur (*see id.* ¶¶ 7.14 and 11.7 (both parties would use "their best efforts" to cause Poth to be released from all personal guarantees)); and (5) that Poth would receive a three-year employment contract with Viasource, and that Poth would be paid one year's compensation if that contract was terminated without cause (*see id.* ¶ 10.6). As previously dis-

cussed, these alleged misrepresentations are addressed in the Merger Agreement. Defendants may have breached all of these contractual duties; however, Plaintiffs are limited to a claim for breach of contract because the Defendants' duties to the Plaintiffs arose from the Merger Agreement, a contract. Under Virginia law, in order for a party to maintain both a breach of contract and a tortious breach of that duty, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Met. Auth.*, 507 S.E.2d at 347. Thus, Defendants' alleged breach of the Merger Agreement does not give rise to a cause of action for actual fraud.

■ The remaining allegations relating to the IPO are not actionable as fraud in the inducement because "fraud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements of future events." *Patrick v. Summers*, 235 Va. 452, 369 S.E.2d 162, 164 (1988). The allegations concern future events: that the *planned* Viasource IPO was to exceed $150 million, that the per-share price of the Viasource stock sold during *any* IPO *would be* $14 to $16. These allegations are not actionable under Virginia law. "The reason underlying the general rule is that a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." *Id.* Thus, the Court grants summary judgment in favor of Defendants on Plaintiff's claims for pre-merger fraud and constructive fraud, Counts VI and VII.

3. *The Post–Merger Fraud Claims— Counts VIII and IX*

■ In Counts VIII and IX, Plaintiffs claim that Russey and Fitzgerald committed fraud and constructive fraud after the merger by misleading Poth into believing

that payment of the balance of the purchase price for Excalibur would be made quickly, and that Poth would be released from all of his personal guarantees. Plaintiffs contend that they were led to believe that the balance of the Excalibur purchase price would be paid quickly through the IPO, the post-closing adjustment, and the ten percent holdback.

As to the IPO, Plaintiffs were aware of the possibility that the IPO might not raise the $150 million they were expecting. (*See* Poth Tr. at 158:18–160:3; Letter from J. Holman, Esq. to D. Houser, Esq. of July 20, 2000.) Thus, Plaintiff could not have justifiably relied on the representation that the IPO would cause Viasource to pay Poth's Note earlier than scheduled. All representations as to the IPO were further substantiated by Viasource's reliance on DLJ's estimates or on the publicly-available Form S–1, and amendments, filed with the SEC. Hence, these statements are not actionable. As to the post-closing adjustment and 10 percent holdback obligations, those items were specifically covered under the Merger Agreement; therefore, under *Richmond Metropolitan Authority*, these allegations are not actionable under actual or constructive fraud. For these reasons, the Court grants summary judgment in favor of Defendants on Plaintiffs' claims for post-merger fraud and constructive fraud, Counts VIII and IX.

4. *Breach of Fiduciary Duty—Count X*

■ Defendants are entitled to summary judgment on Plaintiffs' breach of fiduciary claim. Plaintiffs contend that Defendants allegedly manipulated the IPO and then made preferential payments to themselves to the detriment of the Poths and other Viasource creditors. Plaintiffs also contend that, after Viasource allegedly

became insolvent in 2001, Defendants breached their fiduciary duty to the Poths by failing to make substantial payments to them, which would have given the Plaintiffs a preference over other Viasource creditors. When a corporation approaches insolvency, the fiduciary duty of the directors shifts from the stockholders to the creditors: "when a corporation becomes insolvent, or in a failing condition, the officers and directors no longer represent the stockholders, but by the fact of insolvency, become trustees for the creditors, and that they then cannot by transfer of its property or payment of cash, prefer themselves or other creditors." *FDIC v. Sea Pines Co.*, 692 F.2d 973, 977 (4th Cir.1982).

█ With respect to the manipulation of the IPO, Plaintiffs contend that Viasource was insolvent at the time of the IPO and that the Defendants' duty transferred to them as creditors. They assert that Viasource sought the waiver of certain GECC debt compliance covenants on April 13, 2000: the covenants related to certain financial ratios such as leverage, debt service, and capital expenditures for fiscal 2001. Plaintiffs contend that on August 15, 2000, Viasource amended the GECC revolving credit facility to increase available funds up to $25 million. GECC also waived the requirement of the prepayment of a portion of its loan facility in connection with Viasource's planned IPO. Defendants respond that Viasource received an unqualified opinion from its auditors with regard to its financial statements for the year ended December 31, 2000. (Defts.' Mem. Reply Summ. J. at 21.) Viasource's financial statements for the six months ending June 30, 2000, and for the nine months ending September 30, 2000, also showed that the company was not insolvent. (*Id.*) The Court finds that Viasource was not insolvent at the time of the IPO. The company had received an unqualified opinion from its auditors with regards to its financial statements for the year ending December 31, 2000. Viasource's financial statements for fiscal 2000 also support this finding. Plaintiffs maintain that Viasource's loss of $50 million in the fourth quarter of 2000 and a subsequent restructuring suggests that the company was in financial straits. However, a loss in one quarter and a restructuring do not make a company insolvent—most companies in the United States would be insolvent under this definition. Plaintiffs then make a blanket statement that Viasource was not able to pay its debts as they became due because Viasource was not timely paying its vendors and also included losses for equipment. (Pls.' Mem. Opp'n Summ. J. at 43.) Plaintiffs fail to provide any specifics as to which vendors were not being paid on time and for what amounts of money.

█ Furthermore, Plaintiffs seek for the Court to question the company's business judgment. The business judgment rule is a presumption that, when making business decisions, the directors of a corporation act on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the corporation. Va.Code § 13.1–690; *Dellastatious v. Williams*, 242 F.3d 191, 195–96 (4th Cir.2001); *Lake Monticello Owners' Ass'n v. Lake*, 250 Va. 565, 463 S.E.2d 652, 655–56 (1995); *Penn v. Pemberton & Penn, Inc.*, 189 Va. 649, 53 S.E.2d 823, 829 (1949). A court generally will not substitute its judgment for that of the board of directors, unless the plaintiffs show that the directors' decision involved a breach of fiduciary duty, such as fraud, bad faith or unconscionable conduct. *See Dellastatious*, 242 F.3d at 195–96; *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1185–86 (4th Cir.1995). The Court finds that, absent other evidence, Plaintiffs have failed to overcome the presumption of the business judgment rule, and they fail

to raise any material issue in dispute. Therefore, from the objective evidence, the Court concludes that Viasource was solvent at the time of the IPO.

Regarding the allegation that the Defendants engaged in a scheme to avoid repayment of their payments into the bankruptcy estate, this claims falls within the exclusive jurisdiction of the bankruptcy court and can be brought by the trustee for the benefit of all Viasource creditors—not just the Poths. *Delgado Oil Co. v. Torres,* 785 F.2d 857 (10th Cir.1986). The Court, therefore, grants summary judgment in favor of Defendants on Plaintiffs' claims of breach of fiduciary duty.

### III. CONCLUSION

Plaintiffs seek, through this litigation, to gain an upper hand on their fellow unsecured creditors; however, Plaintiffs do not have a claim against the Defendants beyond a breach of contract. The Defendants are entitled to summary judgment as a matter of law as to the federal and state securities claims and the common law fraud claim because Plaintiffs are unable to raise an issue of material fact regarding their unreasonable reliance on unsubstantiated oral statements that were in contradiction to the terms of the Merger Agreement that Plaintiffs signed. The Defendants are entitled to summary judgment on the breach of fiduciary duty claim because the Defendants did not owe Plaintiffs a fiduciary duty before the Merger Agreement was signed, and any fiduciary duty that existed before Viasource filed for bankruptcy falls within the jurisdiction of the bankruptcy court and must be asserted by the trustee for the benefit of all the Viasource creditors. The Court grants summary judgment in favor of all Defendants and against Plaintiffs on all counts. From the foregoing, it is hereby

ORDERED that Defendants Craig A. Russey, Douglas J. Betlach, Roy D. Tar-

taglia, Bruce A. Nassau, William A. Sprague, V. Michael Fitzgerald, Lawrence J. Toole, Randall R. Lunn, Crest Communications Holdings, LLC, and Crest Communications Partners, LP's, Motion for Summary Judgement is GRANTED as to all of Plaintiffs Konrad Eric Poth and Ferol A. Poth, in her capacity as Trustee for the Konrad Forrest Poth 2000 Trust's, claims.

The Clerk is directed to forward a copy of this Order to counsel.